**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No.  25-mj-02215-GLS |
| : | |
| **ROBERT MATTHEW SHINES** : | |
| : | |
| **Defendant** : | |

**DEFENDANT'S RESPONSE**
**TO GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

Robert Shines, by and through counsel, hereby submits this Response to the Government's Motion for Defendant's Pretrial Detention (hereafter "Government's Renewed Motion"), ECF 25.

On October 20, 2025, United States Magistrate Judge Ajmel A. Quereshi ordered Mr. Shines released after a detention hearing.  The Government requested a stay of the magistrate court's order, and that request was denied.  ECF 16.

On October 21, 2025, the Government filed a Motion to Stay Release Order and for Expedited Appeal of Release Order (hereafter "Government's First Motion").  ECF 18.  The following day, Mr. Shines filed a Response to the Government's Motion (hereafter "Defendant's First Response").  ECF 19.  A hearing on the Government's appeal is currently scheduled for November 13, 2025, at 10:30, a.m.

On November 5, 2025, the Government filed its Renewed Motion.  ECF 25.  The Government's Renewed Motion appears to state no additional grounds for relief or substantive arguments in support of detention.

1

As stated in Mr. Shines' Response, the Government's Motions "present[] no new evidence or argument as to why the magistrate court's decision on release should be reversed, and fail[] to make any showing as to why it is entitled to a stay of the magistrate court's release order." ECF 19.  The magistrate court found that Mr. Shines did not present a serious risk of flight, and that any potential for danger to the community could be adequately addressed by conditions of release. These findings were more than supported by the facts in the record, including Mr. Shines' utter lack of criminal history; his cooperation with authorities; and his ties to the community, which include his sister with whom he has resided since his detention hearing.  Indeed, the only new circumstance since the filing of the Government's appeal is that Mr. Shines has complied flawlessly with his release conditions.

In support of this Response, Mr. Shines further states the following:

**I.         The Government has failed to prove that Mr. Shines presents a serious risk of flight.**

The magistrate court carefully considered the evidence presented by the Government at the detention hearing, and concluded that the Government had not met its burden to show that Mr. Shines posed a serious risk of flight.  As Mr. Shines previously stated in his Response, and the Government does not appear to contest:  Mr. Shines has never failed to appear for court, because he has never been summoned to court, and has no criminal history.  He has no history of evading the law, and the Government has not shown that he has any intention of doing so.  At the detention hearing, the Government pointed to an allegation in the Complaint that Mr. Shines lied to a Customs and Border Patrol agent in May of 2025 about the purpose of his travel in China, however as the magistrate court found, one instance of untruthfulness, even if proven, can hardly form the basis of a finding that Mr. Shines has a "character" for untruthfulness under 18 U.S.C. § 3142(g).

2

See Exh. 1[1] at 3:21:05; *see also United States v. Lamar*, 600 F. Supp. 3d 714, 722 (E.D. Ky. 2022) (distinguishing "between someone being inclined to avoid being caught in the act and someone, once caught and brought before the court, being inclined to jump bail"). In addition, the Government concedes that Mr. Shines voluntarily cooperated and gave an interview with federal agents when arrested on this case.

The Government now reiterates the same argument it previously presented at the detention hearing and in its First Motion: that there is a theoretical possibility of Mr. Shines defecting to the Peoples' Republic of China (PRC). However, there continues to be no evidence that anyone within or associated with the Chinese government has expressed interest in helping Mr. Shines do this, and no evidence that Mr. Shines himself has either expressed interest or made any preparations to do so.[2] This stands in contrast to the sole case cited by the Government on this issue, *United States v. Wenheng Zhao*, No. 2:23-CR-372-RGK, ECF No. 51, at *2 (C.D.C.A. Oct. 3. 2023), in which the defendant had searched for one-way flights and had $20,000 in cash in a grocery bag in his car. The magistrate court correctly found that the risk of Mr. Shines' nonappearance at court was not supported.

---

[1] Exhibit 1, the audio recording of the detention hearing, was submitted with Defendant's First Response, ECF 19.

[2] The Government continues to be unable to cite a single comparable case in which an American defected to the PRC while on supervision, instead citing a case in which a Chinese national fled, along with a British citizen, while on release in Serbia. The Government makes no attempt to analogize the facts of that case to this one. Government's Renewed Motion at 14.

**II.     The Government has failed to prove that Mr. Shines presents such a danger to the community that no conditions can adequately ensure community safety.**

**A. Any potential danger posed by Mr. Shines' continued release is speculative, as the Government has failed to proffer the nature of the information alleged to have been disclosed.**

As it did at the detention hearing, the Government now argues that there is a danger to the community primarily based on the seriousness of the alleged offense. However, the Government acknowledges that it is unable to provide evidence of the actual harm stemming from the offense, because they cannot proffer what information was actually disclosed:

> The Government does not know with certainty at this point the full scope of who those potentially compromised U.S. clearance holders are, what sensitive information the Defendant obtained from them, and what information the Defendant passed on to agents of the PRC.

Government's Renewed Motion at 4.

The Government reasoned at the detention hearing, "You don't pay for nothing, and there must have been something valuable somewhere." Exh. 1 at 3:12:25. As the magistrate court noted in response, based on the Government's proffer, "This could be an investor, funneling relative low amounts of money in hopes that it will lead to something." *Id.*  In other words, based on the proffer provided, the potential for harm could very well be minimal, because the documents passed on may have contained little if any sensitive information.

**B. The seriousness of the charged offense in and of itself does not satisfy the Government's burden of proof.**

Lacking evidence of actual harm, the Government relies instead on the seriousness of the charge itself to justify detention, stating, "If he would violate the espionage laws of the United States, there is no reason to believe he would follow a Court order." Government's Renewed Motion at 8. This is precisely the argument that the magistrate court properly rejected as contrary to the text and intent of the Bail Reform Act.

4

Where the Government seeks to detain an individual based on potential danger to the community, they must present "clear and convincing evidence." 18 U.S.C. § 3142(f). The instant charge is not among the list of enumerated charges which trigger a rebuttable presumption of detention and relieve the Government of its burden. 18 U.S.C. § 3142(e)(2). In a non-presumption case, where the remaining factors under 18 U.S.C. § 3142(g) weigh largely, if not entirely, in favor of release, the individual should not be detained based primarily on the seriousness of the alleged offense. *See United States v. Eischeid*, 315 F. Supp. 2d 1033, 1036 (D. Ariz. 2003) (ordering release of defendant charged with the death-eligible offense of murder in aid of racketeering, despite the seriousness of the offense, based on the defendant's minimal prior record and otherwise upstanding history, including education, work and ties to the community.)

In this case, the Government has provided little in the way of specific information as to the offense conduct, and Mr. Shines' personal background does not weigh in favor of detention. Instead, the Government's primary argument, both at the detention hearing and in subsequent filings, is that the charge itself is so serious as to warrant detention. The magistrate court properly concluded that this was inconsistent with the Bail Reform Act's default position of release in a non-presumption case. Exh. 1 at 3:22:55 (magistrate court's reasoning that detention based primarily on seriousness of the offense in non-presumption case would be "contrary to law."); *see also Eischeid*, 315 F. Supp. at 1037 ("Congress […] identified specific offenses in which a rebuttable presumption of detention would arise and, significantly, did not include death penalty cases in the list. If Congress has not created even a rebuttable presumption of detention in death penalty cases, this Court should not effectively create an irrebuttable presumption of detention by holding that the prospect of the death penalty alone is sufficient to create a serious flight risk.").

5

### C. The Government's Renewed Motion again cites cases which are not analogous to Mr. Shines'.

In its original Motion to Stay Release Order and for Expedited Appeal of Release Order, the Government cited a string of cases in support of its dangerousness argument. ECF 18 at 2. In its Renewed Motion (ECF 25 at 15), the Government appears to restate the same citations, verbatim, notwithstanding the fact that Mr. Shines has already distinguished these cases in his Response (ECF 19). As Mr. Shines previously stated:

> The Government now argues in its Motion that the Court should detain Mr. Shines because "courts have recognized this knowledge as dangerous to the community." Government's Motion, 2. However, the cases cited by the Government **all involve United States service-members with Secret or Top Secret security clearances and direct access to classified information, a situation very different from Mr. Shines'**. In each of the cases cited, the courts found that the danger to the community arose from the defendant service-members' long tenure with direct access to classified material. *United States v. Wenheng Zhao*, No. 2:23-CR-372-RGK, ECF No. 51 (C.D. Cal. Oct. 3., 2023) (U.S. Navy officer with Secret security clearance, who likely knew other Secret information); *United States v. Madrigal*, No. 3:22-CR-2019, 2023 WL 2823504 (W.D. Va. April 7, 2023) (U.S. Army officer and former JAG officer with Top Secret clearance); *United States v. Mallory*, 268 F. Supp. 3d 854, 866 (E.D. Va. 2017) (former CIA covert agent who previously had a Top Secret security clearance over the course of "decades of government employment"); *United States v. Teixeira*, No. 1:23-CR-10159, ECF No. 37 (D. Mass. May 22, 2023) (Air National Guardsman with Top Secret clearance). In Texeira in particular, detention was based in part on the defendant's "offer to provide foreigners classified information" a month before his arrest, which implied that he still had sensitive information he was willing to share. *United States v. Teixeira*, No. 1:23-CR-10159, ECF No. 37 at 19-20 (D. Mass. May 22, 2023).
> Mr. Shines, by contrast, is a private citizen, with no security clearance, who at most is alleged to have obtained documents from those with more access. Unlike in the cases cited by the Government, there is no evidence to believe that Mr. Shines currently possesses any classified information. If anything, the cases cited in the Government's Motion illustrate the contrast between the instant case and those where detention has been ordered.

ECF 19 at 8 (emphasis added).

The cases cited both in the Government's First Motion and in the Renewed Motion are easily distinguishable from the present case, and the Government provides no new authority to support its position.

### D. Mr. Shines's community ties are significant.

In its First Motion, the Government claimed that Mr. Shines had "no appreciable ties to the District of Maryland." ECF 18 at 1. The Renewed Motion reiterates the same claim, stating that Mr. Shines "lacks any meaningful ties to this District." ECF 25 at 16. As Mr. Shines has already explained in his First Response, this claim is not only factually incorrect – Mr. Shines has lived a significant portion of his life in Maryland – but it is also misleading as a matter of law, since "community ties" under the Bail Reform Act include ties outside of the district of the prosecution:

> Mr. Shines was born in Illinois and has a sister there, as well as a brother in Alabama. However, Mr. Shines himself has lived in Maryland for the past thirteen years, and owns his residence in Hyattsville, Maryland. Mr. Shines therefore respectfully disagrees with the Government's assertion that "he has no appreciable ties to the District of Maryland." Government's Motion, 1. Moreover, **courts have held that "'community ties' under the Bail Reform Act embrace both the community in which the charges are brought and also a community in the United States to which the defendant has ties."** *United States v. Santos-Flores*, 794 F.3d 1088, 1093 (9th Cir. 2015); *see also United States v. Abrego*, 787 F. Supp. 3d 830, 855 (M.D. Tenn. 2025) ("There is no allegation, much less evidence, that [the defendant] has intentionally failed to appear in court in the past. While [the defendant] lacks community ties specifically in this district, that circumstance may be probative of his risk of unintentional non-appearance in this district, but it is not very probative of whether he would intentionally not show up here and instead choose the path of a fugitive.") (internal quotations omitted).

ECF 19 at 6 (emphasis added).

The Government's argument as to Mr. Shines' community ties is therefore without merit, and the Government has pointed to little else in Mr. Shines' background warranting a finding of either risk of non-appearance or dangerousness.

### E. The conditions imposed by the magistrate court are restrictive, and Mr. Shines has fully complied.

While the magistrate court found that Mr. Shines' release was appropriate, it also gave more than ample consideration to the Government's concerns in crafting its Order Setting

7

Conditions of Release.[3] ECF 17. The Order's restrictions include: home detention at the Chicago residence of Mr. Shines' sister, who was verified by Pretrial as a suitable third-party custodian; location monitoring; travel restrictions; and a condition that Mr. Shines have no internet-capable devices without monitoring software. *Id.* Since October 20, when Mr. Shines was released, he has flawlessly complied with these conditions.

The Government asserts in its Renewed Motion that: "Although there have been no identified violations of his conditions of supervision since his arrest, the Defendant is likely to be the most compliant in these earliest days after his arrest, particularly while this motion is pending." Renewed Motion at 3. This claim is utterly without support.

To the contrary, the magistrate court essentially trusted Mr. Shines to make the logistically-challenging trip from Maryland to Chicago without an internet-connected device or personal vehicle, then report to the local pretrial supervisor in Chicago, arrange for a home inspection, and later return to court in Maryland for the instant court hearing. He has completed these tasks without issue. The Government's professed concerns that Mr. Shines would seek asylum in China or attempt to make contact with anyone involved in the present case would certainly have been most compelling during the time prior to Mr. Shines' reporting to his local supervisor and establishing his residence in Chicago. Instead, Mr. Shines has complied meticulously with his conditions.[4]

---

[3] Pretrial Services had recommended Mr. Shines' release without supervision.
[4] Undersigned counsel can represent that Mr. Shines has remained in constant contact to ask frequent questions about how best to comply with his release conditions, after obtaining a non-internet-connected ("dumb") phone.

## CONCLUSION

The Government has cited no new authority in support of its Renewed Motion, nor has it identified any error in the magistrate court's determination that Mr. Shines should be released with appropriate conditions. Both the Government's First Motion and Renewed Motion should therefore be denied.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
Sean McKee, MD#0912160236
Assistant Federal Public Defender
Federal Public Defender's Office
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770-1405
(301) 344-0600
Fax No. (301) 344-0019
E-mail: sean_mckee@fd.org